Matter of Megan NN. v Michael NN. (2022 NY Slip Op 06674)

Matter of Megan NN. v Michael NN.

2022 NY Slip Op 06674

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

535668
[*1]In the Matter of Megan NN., Appellant,
v
Michael NN., Respondent. (Proceeding No. 1.)
In the Matter of Michael NN., Respondent,
v
Megan NN., Appellant. (Proceeding No. 2.)
In the Matter of Megan NN., Appellant,
v
Michael NN., Respondent. (Proceeding No. 3.)

Calendar Date:October 11, 2022

Before:Garry, P.J., Clark, Aarons, Pritzker and Fisher, JJ.

Whiteman Osterman & Hanna LLP, Albany (Robert S. Rosborough IV of counsel), for appellant.
Hinman, Howard & Kattell, LLP, Binghamton (Katherine A. Fitzgerald of counsel), for respondent.
Norbert A. Higgins, Binghamton, attorney for the children.

Clark, J.
Appeals (1) from an order of the Family Court of Broome County (Mark H. Young, J.), entered June 27, 2022, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for permission to relocate with the subject children, and (2) from an order of said court, entered June 27, 2022, which dismissed petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, to hold respondent in willful violation of a prior order of custody.
Michael NN. (hereinafter the father) and Megan NN. (hereinafter the mother) are the divorced parents of two children, a daughter (born in 2009) and a son (born in 2011). Pursuant to a judgment of divorce entered in December 2020 — which judgment incorporated three orders issued by Supreme Court during the pendency of the divorce action — the father was granted sole legal and physical custody of the children, while the mother was granted supervised parenting time as the parties may mutually agree. In March 2021, the mother filed a modification petition pursuant to Family Ct Act article 6, through which she sought joint legal custody and shared physical custody of the children. The mother also alleged that the father wanted to relocate to Portland, Oregon, and she alternatively sought an order preventing him from doing so, granting her sole legal and physical custody of the children, and removing the supervision requirement imposed upon her parenting time. In May 2021, the father filed an answer and cross petition seeking permission to relocate with the children to Portland.
After the commencement of a fact-finding hearing in September 2021, Family Court issued a temporary order granting the mother two specified periods of supervised parenting time per week. In November 2021, the father amended his modification petition alleging that he had received a job offer and requesting permission to relocate the children to Portland during the pendency of the hearing; such emergency relief was denied. The mother amended her modification petition in January 2022, seeking temporary custody of the children following the father's relocation to Portland earlier that month and the children being left in the care of the paternal grandparents; the court denied such relief. In April 2022, the mother filed a violation petition alleging that the children had traveled to Portland to visit the father for a week, causing her to miss parenting time.
Following an extended fact-finding hearing and a Lincoln hearing, Family Court issued an order finding that the best interests of the children were served by allowing them to continue to reside with the father, granting his relocation petition and dismissing the mother's modification petition. The court also issued a separate order dismissing the mother's violation petition. The mother appeals from both orders.[FN1]
"The proposed relocation of a custodial parent provides the requisite change in circumstances required for Family [*2]Court to consider whether a modification of the existing custody order serves the best interests of the children" (Matter of Anthony F. v Kayla E., 191 AD3d 1108, 1108-1109 [3d Dept 2021] [citations omitted], lv denied 37 NY3d 901 [2021]; see Matter of BB. Z. v CC. AA., 166 AD3d 1334, 1335 [3d Dept 2018]). "The parent seeking to relocate bears the burden of demonstrating, by a preponderance of the evidence, that the proposed relocation is in the children's best interests" (Matter of Kristen MM. v Christopher LL., 182 AD3d 658, 659 [3d Dept 2020][internal quotation marks, brackets and citations omitted]; see Matter of Michael BB. v Kristen CC., 173 AD3d 1310, 1311 [3d Dept 2019]). "In assessing the children's best interests, Family Court must consider the totality of the circumstances, including each parent's reasons for seeking or opposing the move, the quality of the relationships between the children and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the children's future contact with the noncustodial parent, the degree to which the custodial parent's and children's lives may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the children through suitable visitation arrangements" (Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1341 [3d Dept 2019] [internal quotation marks, brackets and citations omitted]; see Matter of Anwar RR. v Robin RR., 196 AD3d 756, 757 [3d Dept 2021]).
The mother's opposition to the move was primarily due to the physical distance it would place between her and the children. However, the record reveals that as a result of her struggles with alcohol addiction, the mother has been absent from the children's lives for extended periods. When she has been present, the mother has placed the children in uncomfortable and unsafe situations. For example, during one instance, the mother became so intoxicated during her parenting time that she became unconscious, and the children had to seek the help of a neighbor to have the father retrieve them. During another instance, the mother consumed alcohol and drove with the son in the vehicle, resulting in her most recent of four arrests for driving while intoxicated. The children retain such memories, causing them a lot of trepidation about spending time with the mother. While the mother claimed that her latest period of sobriety — approximately 17 months by the conclusion of the hearing — was different than the prior three rehabilitative programs she had completed, the record revealed that she had made similar claims before and previously maintained sobriety for up to two years, only to relapse.
The record also established that the father has been the primary custodian of the children since 2013, and that the children share a very close bond with him and with the father's significant other (hereinafter the wife).[FN2] When the wife completed [*3]a doctoral program in psychology, she was offered a job in Portland, and the father sought to relocate to Portland with the children. During the pendency of the hearing, the father — who has never received financial assistance from the mother to support the children — received a job offer in Portland that would double his salary. Despite the children's hesitation about spending time with the mother, the father encouraged electronic communication between the mother and the children, and he facilitated visits whenever the children desired them, including transporting the children and paying for a supervisor. The father testified that if he were permitted to relocate with the children, he would continue to facilitate such visits by transporting the children for the mother's parenting time in New York and by arranging parenting time for the mother anytime she visited Portland.
In granting the father's relocation petition, Family Court emphasized the strength of the relationship between the father and the children. Recognizing, as we must, the great deference that we accord Family Court's factual findings (see Matter of Tiffany W. v James X., 196 AD3d 787, 792 [3d Dept 2021]), the record reveals that the father, as the children's primary caretaker, has been able to provide them with stability, while the mother has been a sporadic and, at times, traumatic presence in their lives (see Matter of Kristen MM. v Christopher LL., 182 AD3d at 661; Matter of BB. Z. v CC. AA., 166 AD3d at 1336). By the conclusion of the hearing, the mother had made some progress rebuilding her relationship with the daughter, and the children's wishes, although not dispositive, were appropriately considered by Family Court (see Matter of Shirreece AA. v Matthew BB., 195 AD3d 1085, 1091 [3d Dept 2021]; Matter of Michael U. v Barbara U., 189 AD3d 1909, 1911 [3d Dept 2020]). Further, the relocation significantly enhances the economic opportunities available to the father and the children, while allowing for the father to continue to provide a stable and nurturing environment for the children. Considering all these circumstances, we find a sound and substantial basis in the record supporting Family Court's determination that the children's best interests are served by permitting the father's relocation with the children, rather than awarding the mother primary physical custody (see Matter of Anthony F. v Kayla E., 191 AD3d at 1110-1111; Matter of Kristen MM. v Christopher LL., 182 AD3d at 661-662; Matter of Michael BB. v Kristen CC., 173 AD3d at 1313). Similarly, because the mother has a demonstrated history of being unable to properly discharge her parental responsibilities, we find no error in Family Court directing that the mother's visits continue to be supervised (see Matter of Curtis D. v Samantha E., 182 AD3d 655, 657 [3d Dept 2020]; Matter of Donald EE. v Cheyenne EE., 177 AD3d 1112, 1115-1116 [3d Dept 2019], lvs denied 35 NY3d 903 [2020]). That said, given that the court granted [*4]the mother parenting time "four times per year . . . with the father to have the final decision as to the duration of the visits," we find that the court improperly delegated its authority to determine parenting time to a party (see Matter of Aree RR. v John SS., 176 AD3d 1516, 1518 [3d Dept 2019]; Matter of Aida B. v Alfredo C., 114 AD3d 1046, 1049 [3d Dept 2014]). We modify that portion of the order to give the mother a minimum specific amount of parenting time four times per year, as set forth below.
Next, the mother contends that Family Court erred in dismissing her violation petition. "A party seeking a finding of civil contempt based upon the violation of a court order must establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Matter of John U. v. Sara U., 195 AD3d 1280, 1283 [3d Dept 2021] [internal quotation marks and citations omitted]). The determination of whether a violation is willful generally "distills to a credibility determination" to which we defer absent "an abuse of discretion" (Matter of Tamika B. v. Pamela C., 187 AD3d 1332, 1338 [3d Dept 2020] [internal quotation marks and citation omitted]), but Family Court erroneously opted to dismiss the petition without making any factual findings. Regardless, because the record is fully developed, we utilize our fact-finding powers, which are as broad as Family Court's, to determine whether the court erred in dismissing the mother's violation petition (see Matter of Austin v Smith, 144 AD3d 1467, 1469 [3d Dept 2016]).
The record reveals that the father was aware of the court order granting the mother parenting time and that he planned a vacation that led to the mother missing parenting time. Although the father could have done a better job communicating with the mother to reach an agreed-upon deviation from the order, we note that the mother was notified of the planned vacation, and that she was immediately offered make-up time to accommodate for the time she would miss. Under these particular circumstances, we find that the father did not willfully violate the order (see Matter of Damon B. v Amanda C., 202 AD3d 1333, 1335 [3d Dept 2022]; Matter of Aaron K. v Laurie K., 187 AD3d 1423, 1425 [3d Dept 2020]).
The mother's remaining challenges, to the extent not expressly addressed herein, have been examined and found to be lacking in merit.
Garry, P.J., Aarons, Pritzker and Fisher, JJ., concur.
ORDERED that the order granting the relocation petition is modified, on the law, without costs, by specifying that, beginning in 2023, the mother shall have a minimum of five days of supervised daytime parenting time during the children's Christmas break in even years, and a minimum of four days of supervised daytime parenting time during the children's Thanksgiving break in odd years, and a minimum [*5]of four days of supervised daytime parenting time during the children's spring break every year, and at least two separate five-day periods of supervised daytime parenting time during the children's summer break every year; the children shall spend overnights at the home of the paternal grandparents during the mother's parenting time; the parents shall be permitted to modify this schedule so long as such changes are made in writing and are mutually agreed upon; and, as so modified, affirmed.
ORDERED that the order dismissing the mother's violation petition is affirmed, without costs.

Footnotes

Footnote 1: The attorney for the children supports the relocation.

Footnote 2: When these proceedings were commenced, the wife was the father's girlfriend; however, the two married during the pendency of the hearing.